**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN SANDOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civ. No. 2:14-cv-00859** |
| | ) | |
| **DELMONT BOROUGH,** | ) | **Judge Maurice B. Cohill** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Steve Sandor (hereinafter "Plaintiff" or "Sandor"), was employed as a part-time employee in the Delmont Borough Police Department (hereinafter "Defendant" or "Delmont") in August, 1988 and in June, 1995 he was made a patrolman [ECF No. 7 at ¶9]. He has since been suspended three times [ECF No. 7 at ¶12], and terminated three times from his employment [ECF No. 7 at ¶13]. He was last terminated on August 13, 2013 for an alleged "Be on the look-out" violation [ECF No. 7 at ¶14]. The Amended Complaint does not state how he happened to be rehired after the first two terminations. However, the last time he was terminated the case went to arbitration, and he was ordered to be reinstated by the arbitrator [ECF No. 7 at ¶15k].

Plaintiff has filed this action alleging violations of the Rehabilitation Act of 1973 and the Pennsylvania Human Relations Act [ECF No. 7 at ¶3]. According to the Amended Complaint, in a rather bizarre way to describe his alleged disabilities, the Plaintiff asserts that:

    a) The Plaintiff is regarded as having a Macular hole in his left eye because he was accommodated for this disability since rifle training began on or about 2010 and the employer did not assign or schedule the plaintiff to qualification requiring him to qualify due to the Macular hole impairment.

    b) The Plaintiff has been regarded as having an obesity problem since on or about 2010 when his employer was aware of his lap band surgery. The plaintiff has been accommodated by his employer for his disability since that

1

time by receiving *inter alia* such accommodations as a seat belt extension in his police cruiser.

c) The Plaintiff has been regarded has having a heart problem due to heart surgery the employer was aware of which occurred in 1998. The heart condition and consequent maintenance medications used by the plaintiff are reasonably believed to cause weight issues.

d) The Plaintiff has been regarded as having diabetes as upon information and belief, the employer knew of his condition and the maintenance medications taken which are reasonably believed to cause weight gain. [ECF No. 7 at ¶15a-d]

The Amended Complaint never explains who "regards" the Plaintiff of having these "disabilities," or is the Plaintiff perhaps simply not admitting that he has these conditions? Furthermore, Plaintiff's statements seem to absolve the Defendant of any failure-to-accommodate violation, because in each case the Defendant made accommodations for Plaintiff's medical issues. The Amended Complaint then sets out what appears to be a non sequitur, alleging that the Defendant's earlier accommodations of Plaintiff's sight and weight disabilities constitute a continuing effort to retaliate against him due to his disabilities and the creation of a hostile working environment [ECF No. 7 at ¶16]. We aren't sure what this means unless it means that the "accommodations" by Defendant somehow were admissions by the Defendant that Plaintiff, indeed, did have some disabilities.

Sandor filed the Amended Complaint [ECF No. 7] on September 14, 2014 alleging five counts against Delmont: (I) Discrimination under Section 504 of the Rehabilitation Act of 1973; (II) Hostile Work Environment under Section 504 of the Rehabilitation Act of 1973; (III) Retaliation under Section 504 of the Rehabilitation Act of 1973; (IV) Discrimination under the Pennsylvania Human Relations Act ("PHRA") and; (V) Retaliation under PHRA.

For the following reasons, we will grant Defendant's Motion for a More Definite Statement with regard to Count II. We will deny Defendant's Motion to Dismiss with regard to the PHRA claims in Counts IV and V.

2

## I. Procedural History

On July 1, 2014, Sandor filed his initial Complaint [ECF No. 1]. In response to the Complaint, Delmont filed a Motion to Dismiss, Motion for a More Definite Statement, and a Motion to Strike [ECF No. 5] on September 3, 2014. Delmont requested that Counts I, II, V, and VI be dismissed, that Defendant Delmont Borough Police Department be dismissed, that Exhibit "B" to the Complaint be stricken, and that Counts III and IV of the Complaint either be dismissed or that the Plaintiff be ordered to file a more specific pleading [ECF No. 5-1].

On September 14, 2014, Sandor filed an Amended Complaint [ECF No. 7] seeking to cure the defects present in the first Complaint. On September 29, 2014, Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Delmont filed a new Motion to Dismiss and Motion for a More Definite Statement with regard to Counts II, IV, and V, or in the alternative, requests that the Court require Plaintiff to provide a more definite statement of its claims [ECF No. 8 at ¶10]. Delmont asserts that Sandor failed to state a claim for Hostile Work Environment in Count II, and that Delmont did not exhaust its administrative remedies under PHRA in Counts V and VI [ECF No. 8 at ¶¶7 and 8]. On October 17, 2014 Plaintiff filed a Response to Delmont's Motions [ECF No. 10]. These are the pleadings we consider here.

In addition to the pleadings before this Court, Sandor filed applications with the Pennsylvania Human Relations Commission ("PHRC") for age discrimination and disability discrimination [ECF No. 7 at ¶18]. The disability discrimination claim was declined to be filed by the PHRC and, therefore, a right to sue letter was not issued by the PHRC to Sandor [ECF No. 7 at ¶18].

## II. Relevant Facts

Sandor alleges that employees of Delmont made fun of his health and weight issues, he

3

was "taken into" meetings where he was made to feel insignificant and incompetent due to his medical issues, he was undermined by misleading statements, and he was prevented from advancing in his career [ECF No. 7 at ¶15e]. In 2010, following surgery for his weight issues, Delmont began repeatedly suspending and terminating Sandor without justification [ECF No. 7 at ¶15e]. Sandor reports that he has been suspended no less than three times and terminated no less than three times [ECF No. 7 at ¶¶12 and 13]. Sandor also alleges he was accommodated for his disability of a Macular Eye Hole because Delmont did not require him to obtain rifle qualification. He was also accommodated for his obesity because Delmont provided him with a seat belt extension in his patrol car. Despite the accommodations, and perhaps because of the accommodations, he suffered harassment.

On May 23, 2013 Sandor's attorney contacted Delmont's counsel regarding Sandor's claims. Sandor's final termination was on August 13, 2013 for an alleged "Be on the look-out" violation [ECF No. 7 at ¶14]. The termination was overturned by a neutral arbitrator and Sandor was to be reinstated to his job with back-pay. He was to resume his normal duties and income [ECF No. 7 at ¶15k-l]. However, Sandor was never permitted to return to work. On May 19, 2014 Sandor's Union attorney filed a Charge of Unfair Labor practices. Subsequently, Delmont returned Sandor to the payroll on May 26, 2014 but Sandor remains on indefinite leave [ECF No. 7 at ¶15n]. Sandor's employer is now requiring him to attend an Independent Medical Evaluation ("IME") [ECF No. 7 at ¶15o] before returning to work.

## III. Standard of Review for Rule 12(b)(6) Motion to Dismiss

In ruling on a Rule 12(b)(6) Motion for Failure to State a Claim upon which Relief can be granted, a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

4

complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)); (see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, n.8 (2007)). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does, however, "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). "Factual allegations [of a complaint] must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted).

The Supreme Court in Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. See 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action,

5

supported by mere conclusory statements do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Phillips, 515 F.3d at 232 ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 555 n. 3 (2007)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in Phillips, "We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." 515 F.3d 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

## IV. Analysis

The claims at issue in Delmont's Motion are: Hostile Work Environment under Section 504 of the Rehabilitation Act of 1973; Discrimination under the PHRA and; Retaliation under PHRA. We will discuss each claim in turn.

### A. Claim of Hostile Work Environment Under Section 504 of the Rehabilitation Act of 1973 (Count II)

Section 504 ("Nondiscrimination Under Federal Grants") states:

NO OTHERWISE QUALIFIED HANDICAPPED INDIVIDUAL IN THE UNITED STATES, AS DEFINED IN SECTION 7(6), SHALL, SOLELY BY REASON OF HIS HANDICAP, BE EXCLUDED FROM THE PARTICIPATION IN, BE DENIED THE BENEFITS OF, OR BE SUBJECTED TO DISCRIMINATION UNDER ANY PROGRAM OR ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE.

6

PL 93–112 (HR 8070), PL 93–112, SEPTEMBER 26, 1973, 87 Stat 355.[1]

> (6) THE TERM "HANDICAPPED INDIVIDUAL" MEANS ANY INDIVIDUAL WHO (A) HAS A PHYSICAL OR MENTAL DISABILITY WHICH FOR SUCH INDIVIDUAL CONSTITUTES OR RESULTS IN A SUBSTANTIAL HANDICAP TO EMPLOYMENT AND (B) CAN REASONABLY BE EXPECTED TO BENEFIT IN TERMS OF EMPLOYABILITY FROM VOCATIONAL REHABILITATION SERVICES PROVIDED PURSUANT TO TITLES I AND III OF THIS ACT.

PL 93–112 (HR 8070), PL 93–112, SEPTEMBER 26, 1973, 87 Stat 355.

> To establish a prima facie case of disability discrimination under §§ 501(b) and 504 of the Act, plaintiff must show (1) that he is disabled under the Act, (2) that he is otherwise qualified for the position, (3) that he was excluded from employment solely for the reason of his handicap, and (4) that the program receives federal funding. *See Menkowitz v. Pottstown Memorial Medical Center,* 154 F.3d 113, 123 (3d Cir.1998); *Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir.1996); *Strathie v. Department of Transp.,* 716 F.2d 227, 230 (3d Cir.1983)

Simonetti v. Runyon, No. CIV.A.98-2128, 2000 WL 1133066, at *4 (D.N.J. Aug. 7, 2000) aff'd, 276 F.3d 579 (3d Cir. 2001).

Sandor has described several disabling health conditions and has offered a theory that he

was excluded from employment due to his disabilities. It has not been asserted by the Defendant

that Sandor is not qualified for the position or that the police department does not receive federal

funding.

For a disabled employee to successfully state a claim for a hostile work environment, the

plaintiff must show: (1) he is a qualified person with a disability; (2) he was subject to

unwelcome harassment; (3) the harassment was based on his disability or request for an

---

[1] An act to replace the vocational rehabilitation act, to extend and revise the authorization of grants to states for vocational rehabilitation services, with special emphasis on services to those with the most severe handicaps, to expand special federal responsibilities and research and training programs with respect to handicapped individuals, to establish special responsibilities in the secretary of health, education, and welfare for coordination of all programs with respect to handicapped individuals within the department of health, education, and welfare, and for other purposes. PL 93–112 (HR 8070), PL 93–112, SEPTEMBER 26, 1973, 87 Stat 355.

7

accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) that the employer knew or should have known of the harassment and failed to take prompt effective remedial action. See Walton v. Mental Health Ass'n, 168 F.3d 661, 667 (3d Cir. 1999).

Sandor claims that he was subject to unwelcome harassment and a hostile work environment when he was repeatedly and continuously mistreated by agents of the defendant, including the police chief [ECF No. 7 at ¶37]. Namely, Sandor alleges that the agents would intentionally, negatively, and callously communicate within the police department about the Sandor's weight issues, eye issues, and health. Sandor claims he was the brunt of jokes [ECF No. 7 at ¶37]. Sandor asserts that the harassment was sufficiently severe to create an abusive working environment [ECF No. 7 at ¶39]. Sandor's numerous terminations and suspensions also created a hostile working environment [ECF No. 7 at ¶38]. Sandor asserts his employer did nothing to correct the unwanted harassment [ECF No. 7 at ¶40-41].

In Delmont's Motion to Dismiss it asserts that the allegations do not rise to the level required to set forth a claim for hostile work environment [ECF No. 9 at 7]. A hostile work environment claim must be supported by more than just "the ordinary tribulations in the workplace, such as the sporadic use of abusive language, jokes and occasionally teasing." Youssef v. Anvil Int'l, 595 F. Supp. 2d 547, 564 (E.D. Pa. 2009). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Shramban v. Aetna, 115 Fed.Appx. 578, 580 (3d Cir.2004). Harassing behavior must be "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment." Pennsylvania State Police v. Suders, 542 U.S. 129, 133 (2004) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67(1986)).

8

A plaintiff must establish the presence of a hostile work environment by a totality of the circumstances. The totality of the circumstances may include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it interferes with an employee's work performance. See Miller v. Cohen, 52 F. Supp. 2d 389, 401 (M.D. Pa. 1998) aff'd, 185 F.3d 862 (3d Cir. 1999).

We agree with Delmont that Sandor has not made sufficient allegations of pervasive and regular harassment based on his disabilities to establish a *prima facie* case of hostile work environment. While Sandor provides a general outline of his treatment at the police department, we are not provided with necessary details regarding whether the alleged harassment occurred each week or at one meeting; we are not provided the details with regard to what was said or the tone in which it was said; we were not given the specifics of how Sandor was affected by the alleged harassment in his work performance. Furthermore, Sandor offers the Court no explanatory information or factual background on his suspensions and discharges or regarding his final discharge and what exactly occurred regarding the "Be-on-the lookout" violation. The Court is unable to determine whether the alleged harassment was severe or pervasive with only the scant facts provided in Sandor's pleadings.

Based on our above analysis, the Court will grant Defendant's Motion for a More Definite Statement with regard to Count II – Hostile Work Environment under the Rehabilitation Act of 1973.

### B. Claims under PHRA (Counts IV and V)

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States

or the Commonwealth of Pennsylvania: (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. Ann. § 955 (West).

Sandor's claims of discrimination and retaliation under the PHRA are based upon the same facts as his claims under the Rehabilitation Act of 1973. Sandor asserts that in addition to discriminatory practices, PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for disability accommodations in the workplace or to have otherwise opposed practices made unlawful [ECF No. 7 at ¶60]. With regard to the PHRA claims, Delmont takes issue with the procedure as it occurred.

Sandor filed applications with the Pennsylvania Human Relations Commission ("PHRC") for age discrimination and disability discrimination. The age discrimination complaint has been filed by the PHRC, however the disability discrimination complaint was not filed because the PHRC declined to file the discrimination claim [ECF No. 7 at ¶18]. Plaintiff's counsel subsequently sought a right to sue letter, however, the PHRC does not issue right to sue letters if it decides not to pursue the processing of a complaint [ECF No. 7 at ¶18]. Subsequently, Sandor brought the disability discrimination claim to this Federal Court under The Rehabilitation Act of 1973 and under PHRA. Delmont asserts the PHRA discrimination claim is improper as the administrative remedy has not been exhausted [ECF No. 9 at 9]. Sandor considered the exhaustion requirements satisfied once the disability application was denied [ECF No. 7 at ¶18].

To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination. 43 Pa.S. §§ 959(a), 962. If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA. The Pennsylvania courts have strictly interpreted this requirement, and have repeatedly held that 'persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.'

Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).

It is our understanding that Sandor filed an application with respect to the disability claim to the PHRC and the PHRC declined to file the disability complaint. Sandor does not have the option to file a PHRA complaint himself once the PHRC declines to do so. Therefore, this is not a case where the plaintiff has failed to attend to the proper procedure; rather this is a case where the plaintiff has proceeded in the proper course. The fact that the proper course did not advance to fruition is not reason to bar the claim in our Court. "The mere fact that a remedy may exist is not sufficient; the remedy must be adequate and complete. " Philadelphia Life Ins. Co. v. Com., 410 Pa. 571, 580, 190 A.2d 111, 116 (1963). Where the PHRC has declined to file the complaint, and where they are not able to provide a letter with a right to sue in such instances, we must presume the case is, for all intents and purposes, "dismissed." Furthermore, the public policy behind the administrative step is to reduce the burden on the court system. We find it contrary to public policy to put the "waiting period" of more than one year in place in this situation as it is contrary to judicial economy intended by the procedure itself. We agree with Sandor in that there is no logical reason for postponing the jurisdiction of this Court. We will deny Delmont's Motion to Dismiss Counts V and VI.

**VI. Conclusion**

Pursuant to the foregoing reasoning, we find that Sandor has not sufficiently pleaded his

claim of discrimination in Count II – Hostile Work Environment under the Rehabilitation Act of 1973. The Court will grant Sandor with leave to file a Second Amended Complaint to provide a more definite statement. We will deny Delmont's Motion to Dismiss for failure to exhaust administrative remedies with regard to Counts IV and V under the PHRC. We believe the Plaintiff has administratively exhausted those claims.

An appropriate Order follows.

DATE: *November 24*, 2014

*Maurice B. Cohill for*

Maurice B. Cohill, Jr.
Senior United States District Court Judge